**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL SAUL,<br><br>             Plaintiff,<br><br>         v.<br><br>SEEKING ALPHA INC., *et al.*,<br><br>             Defendants. | Civil Action No. 23-1405 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on a Motion to Compel Arbitration and Stay the Action, or in the Alternative, to Transfer Venue filed by Defendant Seeking Alpha Inc. ("Defendant" or "Seeking Alpha"). (ECF No. 11.) Plaintiff Michael Saul ("Plaintiff") opposed (ECF No. 12), and Defendant replied (ECF No. 13). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Defendant's alternative request to transfer this case to the Southern District of New York.

## I.   BACKGROUND

Plaintiff is a New Jersey resident and a former employee of Defendant. (Compl. ¶ 1, ECF No. 1-2.) Defendant is a financial information content service with headquarters in New York, New York. (*Id.* ¶ 2.)

In January 2021, Plaintiff was hired by Defendant as a Senior Copywriter. (*Id.* ¶ 12.) The terms of Plaintiff's employment are set forth in an offer letter, executed by Plaintiff on January 18,

2021. (*See generally* Offer Letter, Valenzano Aff., Ex. B, ECF No. 12-1; Offer Letter, Sonitis Decl., Ex. A, ECF No. 11-4; *see also* Saul Decl. ¶¶ 8-10, ECF No. 12-2.) During his employment, Plaintiff allegedly observed marketing employees making false and misleading statements about Defendant's services and results to Defendant's customers. (Compl. ¶¶ 15-22.) On multiple occasions, Plaintiff reported his observations of the allegedly unlawful conduct to Defendant Harriet Lefton ("Lefton"), the Head of Content Marketing, and Defendant Jonathan Liss ("Liss"), the Director of Marketplace. (*Id.* ¶¶ 23-24, 28-30.)

Due to his complaints, Plaintiff alleged he was subjected to several instances of retaliation by Defendant. For instance, Plaintiff was "given practically no copywriting work at all." (*Id.* ¶ 33.) Further, Plaintiff alleged that Defendant did not pay him sales commissions, which he was entitled to pursuant to his pay arrangement with Defendant. (*Id.* ¶¶ 37-39; *see also* Offer Letter, Ex. A.) Then, on November 21, 2022, Defendant Karen Weissberg ("Weissberg"), the Human Resources Manager, notified Plaintiff that he was terminated. (Compl. ¶ 42.) After his termination, Plaintiff alleges he experienced further retaliation when Defendant contested Plaintiff's application for unemployment benefits on January 31, 2023. (*Id.* ¶¶ 48-50.)

On February 27, 2023, Plaintiff commenced this action in the Superior Court of New Jersey against Defendants Seeking Alpha, Liss, Lefton, and Weissberg (together, "Defendants"). (*See generally id.*) On March 13, 2023, Defendant Seeking Alpha removed the Complaint to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Notice of Removal, ECF No. 1.)[1] The Complaint asserts two causes of action for retaliation pursuant to: (1) the Conscientious Employee Protection

---

[1] The non-moving defendants, Liss, Lefton, and Weissberg (the "Individual Defendants"), are individual employees of Defendant and are also residents and citizens of Israel. (Notice of Removal ¶¶ 9-10.) Upon review of the record, it does not appear that the Individual Defendants were properly served. Failure to serve, absent a showing of good cause for the failure by Plaintiff, is grounds for dismissal of the Individual Defendants pursuant to Federal Rule of Civil Procedure 4.

Act, N.J.S.A. §§ 34:19-1 *et seq.* (the "CEPA") (Count One) (Compl. ¶¶ 51-57); and (2) public policy (Count Two) (*id.* ¶¶ 58-60).

In lieu of filing an answer, Defendant now moves to compel Plaintiff's claims to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). (Def.'s Mot. 2, ECF No. 11.) Integral to Defendant's motion are two documents, one containing a forum selection clause and the other containing an arbitration provision. Defendant argues first that, pursuant to an arbitration provision located in a New Employee Packet between Plaintiff and Paychex Business Solutions ("Paychex"), Defendant's human resources provider, dated December 6, 2021 ("Arbitration Agreement"), Plaintiff is compelled to arbitrate his claims asserted in the Complaint. (Def.'s Moving Br. 1-2, ECF No. 11-1.) In the alternative, Defendant argues that this case is governed by the forum selection clause located within the Offer Letter and thus, this case should be transferred to the Southern District of New York. (*Id.* at 2.) Plaintiff opposed Defendant's motion arguing, *inter alia*, that the Arbitration Agreement is unenforceable and that the forum selection clause in the Offer Letter violates public policy. (Pl.'s Opp'n Br. 1-3, ECF No. 12.)

## II.   <u>LEGAL STANDARD</u>

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A forum selection clause, which "is treated as a manifestation of the parties' preferences as to a convenient forum," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995), "may be enforced through a motion to transfer under [Section] 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49, 59 (2013). In federal court, the effect to be given to a contractual forum selection clause in diversity cases is determined by

federal, not state law. *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 563 (D.N.J. 2000) (citing *Jumara*, 55 F.3d at 877).

In determining whether to transfer, courts place great weight on valid forum selection clauses. *Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000); *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 564. "[W]here contracting parties have specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the [forum selection] clause '[i]n all but the most unusual cases[.]'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d Cir. 2017) (emphasis added) (quoting *Atl. Marine*, 571 U.S. at 66).

Accordingly, where a valid forum selection clause exists, the traditional § 1404(a) analysis is modified in three ways. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 63). "First, no weight is given to the plaintiff's choice of forum." *Id.* Second, the district court only considers public interest factors, rather than arguments about the parties' private interests. *Id.* "[B]ecause the public interest factors . . . will rarely defeat a transfer motion, the practical result is that [forum selection] clauses should control except in unusual cases." *Id.* (internal quotation marks omitted). Third, when a case is transferred due to a forum selection clause, "a [Section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

## III.    **DISCUSSION**

Defendant's motion seeks two alternative forms of relief in the form of either: (1) an Order compelling arbitration; or (2) an Order transferring venue to the Southern District of New York. (Def.'s Mot. 2.) For the purposes of the instant Memorandum Opinion, however, the Court need only address Defendant's request to transfer venue pursuant to the forum selection clause in the Offer Letter.

A.        **Enforceability of the Forum Selection Clause**

Defendant argues that Plaintiff consented to the jurisdiction of New York regarding all employment-related disputes by signing the Offer Letter containing the parties' valid forum selection clause. (Def. Moving Br. 2.) In his opposition briefing, Plaintiff acknowledges the existence of the forum selection clause in the Offer Letter and that he signed the Offer Letter. (*See, e.g.*, Pl. Opp'n Br. 9 ("Within the Employment Agreement is a provision entitled 'Governing Law and Choice of Forum'."); Saul Decl. ¶ 10 ("At the time I signed the Employment Agreement.").)

In relevant part, the Offer Letter contains a choice of law and forum selection clause that states the following:

> **Governing Law and Choice of Forum.** This letter shall be governed by and construed in accordance with the laws of the State of New York. The sole and exclusive forum for the adjudication of any disputes between you and the Company concerning your employment, including the termination thereof, shall be the United States District Court or the New York State Supreme Court sitting in and for New York County. You expressly consent to the jurisdiction of the said courts and the laying of venue in said courts for said purposes. You and the Company further agree that all such disputes shall be tried to the court and without a jury and expressly waive any right to a trial by jury.

(Offer Letter 3-4.)

Plaintiff argues that the instant forum selection clause is invalid because it violates New Jersey public policy. In this Circuit, however, "forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (internal quotation marks omitted) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1907)). "Forum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause." *Heartland Payment Sys., Inc. v. Steves*, No. 15-3544, 2015 WL 7737344, at *3 (D.N.J. Dec. 1, 2015).

Forum selection clauses will therefore be enforced unless the party opposing enforcement establishes: "(1) that it is a result of fraud or overreaching[;] (2) that enforcement would violate a strong public policy of the forum[;] or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Cent. Jersey Constr. Equip. Sales, LLC v. LBX Co.*, No. 20-19784, 2021 WL 3130855, at *2 (D.N.J. July 21, 2021) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)). "[I]n attempting to make the requisite showing, the opposing party bears 'a heavy burden of proof.'" *Id.* (quoting *Mucciariello v. Viator, Inc.*, No. 18-14444, 2019 WL 4727896, at *3 (D.N.J. Sept. 27, 2019)).

Here, Plaintiff argues that the forum selection clause violates strong New Jersey public policy because of Defendant's "heavily disproportionate" bargaining power and because holding the proceedings in New York would be "extremely inconvenient and burdensome" on Plaintiff. (Pl's Opp'n Br. 26.) In addition, Plaintiff contends that strong public policy in New Jersey prevents him from litigating his CEPA claims outside of New Jersey. (*Id.* 26-28.) The Court finds these arguments unpersuasive.

First, the Court finds Plaintiff's reliance on the holding of *Kubis v. Perszyk Assocs., Inc. v. Sun Microsystems, Inc.* and its language concerning uneven bargaining positions to be misplaced. 146 N.J. 176, 193-94 (1996). There, the New Jersey Supreme Court held that forum selection clauses in contracts subject to the Franchise Act are preemptively invalid on public policy grounds. *Id.* at 192-193. *Kubis*'s holding, however, is limited to cases where a plaintiff asserts a valid claim under the Franchise Act. *See Cadapult Graphic Sys.*, 98 F. Supp. 2d at 565. The New Jersey Supreme Court did not intend to extend *Kubis*'s protection to non-Franchise Act cases such as the

present action. *See id.* at 566. Indeed, Plaintiff has not asserted any valid Franchise Act violation and thus, the public policy set forth in *Kubis* does not apply here.[2]

Second, while Plaintiff argues that there is New Jersey public policy against forcing Plaintiff to litigate or arbitrate his CEPA claims in New York, he cites to no case law or other authority to support his contention. Indeed, Plaintiff identifies no specific New Jersey policy that should override the parties' forum selection clause. *See, e.g., Rosado v. TAM Lending Ctr., Inc.*, No. 18-13430, 2019 WL 1292968, at *5-6 (D.N.J. Mar. 21, 2019) (rejecting similar arguments by plaintiff as to why forum selection clause was not enforceable).

Finally, while Plaintiff asserts that it would be inconvenient for him to litigate his claim in New York due to his residence in New Jersey, he does not meet his burden to show that it would be so seriously inconvenient as to be unreasonable. *See id.* A party arguing that a forum selection clause is so seriously inconvenient that it is "'unreasonable' must meet a strict standard of proof." *Danka Funding, L.L.C v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 471 (D.N.J. 1998) (quoting *In re Diaz Contracting, Inc.*, 817 F.2d 1047, 1051 (3d Cir. 1987)). A court should decline to enforce a clause only where the forum specified would be so seriously inconvenient that the defendants would be effectively denied their day in court. *Id.* (quoting *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 256 (3d Cir. 1986)). Here, Plaintiff, as the objecting party, failed to show more than "mere inconvenience or additional expense." *Banc Auto, Inc. v. Dealer Servs. Corp.*, No. 08-3017, 2008 WL 4055830, at *3 (E.D. Pa. Aug. 28, 2008).

---

[2] The Court also notes that even assuming *arguendo* that *Kubis* was applicable to the instant matter, state law is not dispositive on a motion to transfer venue. Federal law determines whether a forum selection clause is enforceable. *See Register v. GNC Holdings, Inc.*, No. 17-1320, 2017 WL 4675386, at *1 (D.N.J. Oct. 17, 2017). Instead, a "state's public policy is but one factor to consider, albeit an important factor, in a section 1404 analysis." *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 563 n.2.; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-32 (1988) (finding that a district court, in analyzing a section 1404(a) motion, should not consider as dispositive a state law policy disfavoring forum selection clauses).

Difficulties relating to Plaintiff's residency in New Jersey are not sufficient to effectively deny Plaintiff of his day in court should he be required to litigate in New York.

Because Plaintiff has not met his burden of proof in opposing the forum selection clause and because the forum selection clause is part of a legitimate contractual agreement signed by both parties, the Court finds that the forum selection is valid, and thus, enforceable.

### B.    Transfer Under Section 1404(a)

Next, the Court considers whether transfer to the Southern District of New York is appropriate. In doing so, the court considers six public interest factors:

> [t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (citations omitted).

Because the forum selection clause is valid and enforceable, the Court considers only the public interest factors, which should "rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 63-65. Further, no weight is given to Plaintiff's choice to file in this District. *See In re McGraw-Hill*, 909 F.3d at 57 (citing *Atl. Marine*, 571 U.S. at 64).

The public interest factors here weigh in favor of transfer. The first factor is neutral because a judgment from this District or the Southern District of New York "could easily be registered in another district." *SI Power LLC v. Pathway Holdings Mgmt. V, LLC*, No. 15-6101, 2016 WL 7130920, at *9 (D.N.J. Dec. 7, 2016). The second factor weighs slightly in favor of transfer because this case is at an early stage and thus, practical considerations do not warrant its retention in this District. *See Cadapult Graphic Sys.*, 98 F. Supp. 2d at 568; *Darrow v. InGenesis, Inc.*, No. 19-17027, 2020 WL 2059946, at *5 (D.N.J. Apr. 29, 2020). The third factor weighs in favor of transfer because the District of New Jersey has faced significant court congestion for years, and

"the administrative difficulties stemming from court congestion heavily support transferring this matter." *Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*, No. 20-6180, 2021 WL 268176, at *8 (D.N.J. Jan. 27, 2021). Currently, the District of New Jersey has a demonstrably heavier caseload than the Southern District of New York. A comparison of the relative congestion of dockets in the two districts suggests that this action is likely to reach its resolution more efficiently in the Southern District of New York than in this Court.[3] The fourth factor weighs in favor of transfer because, while New Jersey may have an interest in resolving a CEPA claim filed by one of its residents, the agreement at issue contains a valid New York forum selection clause, which "[should be] given controlling weight in all but the most exceptional cases." *See Atl. Marine*, 571 U.S. at 63 (alteration in original).[4] "To that end, the fifth factor weighs strongly in favor of [transfer] because of New Jersey . . . public policy in favor of enforcing contractual provisions, including forum selection clauses." *Mancuso v. L'Oreal USA, Inc.*, No. 20-5701, 2021 WL 365228, at *6 (D.N.J. Feb. 1, 2021); *Capadult Graphic Sys.*, 98 F. Supp. 2d at 568 ("New Jersey's general policy of upholding the validity [of] forum-selection clauses is implicated."). Additionally, the sixth factor weighs in favor of transfer because the Offer Letter contains a New York choice-of-law provision, making New York a more appropriate forum. (*See* Offer Letter 3-4.) On balance,

---

[3] The most recent U.S. Court's Statistics and Reports indicate that as of June 30, 2023, there were 60,942 pending cases in New Jersey and 11,744 pending in the Southern District of New York. *See* U.S. Courts, "U.S. District Courts—Civil Federal Judicial Caseload Statistics," https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2023/06/30.

[4] While Plaintiff resided in New Jersey during his employment with Defendant, Plaintiff was employed on a remote basis by Defendant's office in New York. (*See* Offer Letter 1.) Plaintiff's "chain of command" flowed through Defendant's New York office, including any alleged retaliation by Defendant against Plaintiff. *See Darrow*, 2020 WL 2059946, at *4 (finding, in part, that where a "chain of command" flows through an office located in a given district, and where "the alleged retaliation" against a plaintiff also occurred in that district, transfer to that district is appropriate).

then, the public interest factors weigh strongly in favor of transferring this matter to the Southern District of New York.

In sum, the forum selection clause is valid and the public interest factors weigh in favor of transfer. The Court finds none of the "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *See Atl. Marine*, 571 U.S. at 50. The Court, accordingly, grants Defendant's alternative request to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).[5] *See, e.g., Tu v. C.H. Robinson Worldwide, Inc.*, No. 19-16561, 2020 WL 3496930, at *6 (D.N.J. June 29, 2020) (granting defendant's alternative request to transfer to the United States District Court for the District of Minnesota due to a valid forum selection clause); *Darrow*, 2020 WL 2059946, at *6 (granting defendant's alternative request to transfer to the United States District Court for the Western District of Texas and in doing so, deferring decisions about arbitrability issues to be resolved by the transferee district).

---

[5] Because the Court finds transfer is appropriate, the Court declines to consider Defendant's arguments pertaining to the issue of arbitrability. *See, e.g., Lahoud v. Document Techs. LLC*, No. 17-1211, 2017 WL 5466704, at *6 (S.D.N.Y. Nov. 14, 2017) (declining to reach defendants' alternative argument that plaintiff's claims must be resolved in arbitration because the court concluded that the forum selection clause was enforceable).

IV.   **CONCLUSION**

For the reasons stated above, Defendant's Alternative Motion to Transfer Venue to the Southern District of New York is granted. The matter is transferred to the United States District Court for the Southern District of New York. Because the Court is transferring this case, the Court denies Defendant's Motion as to arbitration. Defendant may refile its Motion to Compel Arbitration upon transfer. An accompanying Order consistent with this Memorandum Opinion will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE